THE PINOLEUM COMPANY, Plaintiff, *v.* LEON BARON, Doing Business under the Trade Name and Style of BACO LABORATORIES, and Others, Defendants.

Supreme Court, Kings Special Term, August, 1923.

**Injunction — unfair trade competition — catarrh remedy — simulating color when coloring has no therapeutic value.**

Plaintiff for many years has been making for use as a remedy for catarrh, etc., a preparation labeled "Pinoleum" and has widely advertised it among physicians and druggists. Although it was colored green to make it distinctive the coloring has no therapeutic value. Thereafter a preparation of the same materials as plaintiff's and given a greenish color which it was conceded had nothing to do with the compound was made and sold by defendant under the name of "Baco Pinol Spray." There was ample proof to show that defendant's purpose was to make it possible for druggists to use "Baco Pinol Spray" instead of "Pinoleum" and that he sought to have them use it as such substitute and thereby defraud the consumer. *Held,* that where on a motion for an injunction it was shown and not denied that in a number of instances defendant's preparation was substituted for plaintiff's, the motion will be granted.

MOTION for an injunction.

*Hervey, Barber & McKee,* for plaintiff.

*Joseph Rubin,* for defendant Baron.

CROPSEY, J. For many years the plaintiff has been making a preparation labeled Pinoleum for use as a remedy for catarrh, etc. It has no patent upon the formula. It colored its product g·cen to make it distinctive. The coloring has no therapeutic value. This product plaintiff widely advertised among physicians and druggists.

The defendant thereafter began the manufacture and sale of a preparation which he called "Baco Pinol Spray." According to the statement on the containers in which it was sold, defendant's preparation was made of the same materials as plaintiff's. It was also given a similar greenish color. Upon the argument, defendant's counsel conceded that the color given his preparation had nothing to do with the compound. The defendant offers no explanation for the use of this color. From the papers submitted it is evident the coloring was put in defendant's preparation so it would look like plaintiff's and could be used in place of the latter by unscrupulous druggists.

There was no similarity in the size or general shape of the

bottles in which the two preparations were sold. Plaintiff's preparation cost over four times as much as defendant's. The defendant did not advertise his product, nor did he attempt to interest doctors in it, but confined his efforts to the sale of it to druggists.

The papers show that defendant endeavored to simulate plaintiff's article and that he claimed it was the same as Pinoleum and his salesmen with his knowledge so represented it to the druggists. It does not appear that defendant ever represented his preparation to be Pinoleum, although some of the druggists evidently so considered it. While there is no basis for finding that the defendant endeavored to deceive the druggists or to make them believe that his product was that of the plaintiff, there is ample to show that he made his preparation similar to the plaintiff's for the purpose of making it possible for druggists to use it instead of Pinoleum and that he sought to have the druggists use it as such substitute and thereby defraud the consumer.

The question is whether upon these facts the defendant can be enjoined. While the defendant has the right to make a preparation composed of the same ingredients as that made by the plaintiff, he would have no right to market it as the plaintiff's product. And I think it is equally true that defendant has no right to market his product in imitation of the plaintiff's, when he does so for the very purpose of permitting the druggists to whom he sells it to work a fraud upon their customers, by substituting defendant's preparation for that of plaintiff's when the latter is ordered. So acting the defendant is a party to the fraud perpetrated upon the consumer. The means used by the defendant in trying to procure the use of his preparation as a substitute for that of the plaintiff and the intent with which it is done gives the plaintiff the right to legal redress to prevent defendant's improper conduct. In the case of *Lilly & Co.* v. *Warner & Co.*, 275 Fed. Rep. 752, the plaintiff made a preparation of quinine in which the bitter taste was disguised and chocolate was used as a coloring and flavoring medium. The defendant made a similar compound and offered it as a substitute for plaintiff's but did not pass it off as plaintiff's article. The court held that although defendant would have had the right to use the materials and to make a compound similar to the plaintiff's, it had lost its right to use chocolate as a coloring because of its misuse of the compound in that it had sold it to druggists to be used as a substitute for the plaintiff's. The court said (p. 756): " Having counseled fraud upon the ultimate consumer and having put in the hands of the retail dealer the means of committing the fraud, there is no room for defendant to shift the

blame to the retail dealer and no ground for the defendant to say that it is not answerable for the part which it itself played in the deception of the consumer." To the same effect, see *Coca Cola v. Gay-Ola Co.*, 200 Fed. Rep. 720; *Walker & Sons v. Grubman*, 222 id. 478. In the instant case the fact that defendant's preparation was substituted for that of the plaintiff in a number of instances is shown and is not denied.

Plaintiff's motion for an injunction is granted, with ten dollars costs.

Settle order on notice.

Ordered accordingly.